No. 23713.

Ｊａｍｅｓ Ｄａｌｅ Ｌａｍｂ *v*. Ｔｈｅ Ｐｅｏｐｌｅ ｏｆ ｔｈｅ
Ｓｔａｔｅ ｏｆ Ｃｏｌｏｒａｄｏ.
(484 P.2d 798)

Decided May 10, 1971.

442

Edward H. Sherman, Public Defender in and for the City and County of Denver, Truman E. Coles, Public Defender, David A. Fogel, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Hodges.

By writ of error, defendant Lamb alleges the trial court erroneously denied his motion under Crim. P. 35(b) for post-conviction relief. We do not agree and therefore affirm the judgment of the trial court.

Defendant's 35(b) motion essentially claims a constitutional violation by the trial court when it permitted him to withdraw his previously entered pleas of not guilty and not guilty by reason of insanity and to plead guilty to the charge of assault with a deadly weapon without the benefit of counsel under the circumstances

of this case. As we understand it, the theme of the defendant's argument in support of reversal is that his plea of guilty should not be deemed a voluntary act because he was not represented by counsel and because he was 19 years of age at the time, had only a seventh grade education, and had been in a mental institution. The defendant also buttresses this argument with the allegation in his 35(b) motion that he pled guilty "because of fear and duress when in fact he had a legitimate and meritorious defense of self-defense."

Our review of this record reveals that the trial court complied with Crim. P. 11 prior to accepting the defendant's plea of guilty. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. Although the defendant does not contend that the trial court did not adhere to the requirements of Crim. P. 11, he argues that blind adherence to the mandates of Crim. P. 11 is not enough under the circumstances here. The defendant claims that under the circumstances here, the trial court must go beyond the requirements of Crim. P. 11 by additional and careful inquiry of the defendant for the purpose of making absolutely certain that his plea of guilty is, in fact, his voluntary act.

The following facts are required for a full picture of what transpired prior to the defendant's plea of guilty on February 2, 1965. Having been charged with assault with a deadly weapon, the defendant on January 19, 1965 was arraigned before the trial court. At that time, without being represented by counsel, the defendant entered a plea of not guilty and also not guilty by "reason of insanity at the time, since, and now." Thereupon, the trial court ordered the defendant to be examined by a psychiatrist who was appointed by the court for this purpose.

Although the psychiatrist's report has not been made a part of the record, the trial court in its findings of fact at the conclusion of the 35(b) hearing, set forth that the psychiatrist had examined the defendant on

three occasions at the jail and that during the third visit, the defendant told the psychiatrist that he wanted to change his plea to guilty as soon as possible; that he was "trying to get away with the insanity but thought I'd better straighten my life out now." The report, according to the trial judge's finding, also indicated that the defendant told the psychiatrist that he didn't want to waste any more of the psychiatrist's time and that he would rather have the time "count on my sentence."

It also appears from Exhibit A, a transcription of the arraignment procedures of February 2, 1965, that the psychiatrist communicated with the trial judge by phone and told him that he was going to submit a report stating that, in his opinion, the defendant was and is sane. On the basis of the above, the defendant apparently was then, at his request, returned to court on February 2, 1965 for rearraignment, at which time, he requested that his previous pleas of not guilty and not guilty by reason of insanity be withdrawn and that he be permitted to plead guilty.

As was stated previously, the trial court fully complied with the requirements of Crim. P. 11 before granting the defendant's request to withdraw his previous pleas, and to enter the guilty plea. With reference to the defendant's allegation in his 35 (b) motion that his plea of guilty was entered because of fear and duress, the following colloquy between the trial judge and the defendant which took place at the rearraignment on February 2, 1965 is of significance:

"THE COURT: Understanding all these rights you have, do you insist on pleading guilty to the charge of assault with deadly weapon?

DEFENDANT: Yes, your Honor, and I would like to receive sentencing as soon as possible.

THE COURT: This has been your own free and voluntary action?

DEFENDANT: It certainly has, your Honor.

THE COURT: Did anybody threaten or coerce you?

DEFENDANT: No."

It should also be noted from the transcript of the proceedings before the trial court on February 2, 1965, that prior to accepting the defendant's plea of guilty, the trial court made inquiry of the defendant regarding his desire to have an attorney represent him. The defendant stated that he understood that he would be entitled to be represented by an able lawyer and that if he didn't have the money, the court would appoint one for him. Nevertheless, the defendant did not request the appointment of an attorney and he insisted that he be permitted to plead guilty.

At the 35(b) hearing, the only witness was the defendant. He testified that he did not understand that he had the right to appointed counsel in January and February 1965, when he was charged with assault with a deadly weapon and when he appeared before the trial court for the arraignment procedures. With reference to the alleged fear and duress, which preceded his entry of a plea of guilty, the defendant testified that while in jail, he was told "by the Denver Sheriff's Department" that if he didn't plead guilty, he would get 14 years. The defendant stated that this frightened him and that for this reason he entered his guilty plea. He was also asked by his counsel whether he had a legitimate plea of self-defense in the case and the defendant answered in the affirmative. No further details regarding this alleged self-defense was solicited of the defendant.

On cross-examination, the defendant stated he did not remember most of the questions asked by the trial judge and his answers during the arraignment procedures. Also, he was unable to identify anybody in the sheriff's office who had conversed with him regarding the advisability of pleading guilty. The defendant also testified that he was 19 years of age; that he had a seventh grade education; and that he had previously been in a mental institution.

At the conclusion of the 35(b) hearing, the trial court

made a number of findings substantiating the ruling that the defendant had failed to sustain the burden of establishing any of the allegations of his 35(b) motion. Also, the trial court made a finding that the evidence before the trial court did not reflect any violation of the defendant's constitutional rights. Accordingly, the trial court denied the defendant's motion for post-conviction relief under Crim. P. 35(b).

 When attacking a conviction and sentence by a motion under Crim. P. 35(b), the legality of the judgment and the regularity of the proceedings leading up to the judgment are presumed. *Melton v. People,* 157 Colo. 169, 401 P.2d 605. *See also Sandoval v. Tinsley,* 338 F.2d 48 (10th Cir.). The burden is upon the defendant to establish by at least the preponderance of the evidence the allegations of his 35(b) motion. *See Sandoval v. Tinsley, supra.* It is also fundamental that the weight and credibility to be given to the testimony of witnesses in a hearing of this nature is within the province of the trial court. It is likewise just as fundamental that where the evidence before the trial court amply supports the findings and holding of the trial court, as it does in this case, the judgment of the trial court will not be disturbed on review.

 We disagree with the contentions of the defendant that the record before us reflects that the inquiries by the trial judge of the defendant were purely perfunctory; or that the trial judge failed to perform his affirmative duty to fully ascertain whether the defendant, under the circumstances, freely and voluntarily entered a plea of guilty with an understanding of the consequence of such a plea. In our view, the record reflects that the trial judge did with care and thoroughness make inquiry of the defendant in order to assure himself that the defendant's act of pleading guilty was his free and voluntary act. The evidence produced by the defendant at the 35(b) hearing failed to be persuasive in favor of the defendant's 35(b) contention that

his plea of guilty was not his voluntary and free act. Considering the age and the educational background of this defendant, it is our view, after examining this record, that the defendant competently, freely and voluntarily pled guilty to the charge of assault with a deadly weapon for which he was sentenced to the penitentiary for a term of not less than two nor more than five years.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.